We'll call the next case on the calendar, Joan Kedra v. Richard Schroeter, Mr. Quirk. May it please the Court, I'm Michael Quirk for the Plaintiff Appellant, Joan Kedra. With the Court's permission, we would like to reserve three minutes of our time. That request will be granted. Thank you. This appeal concerns whether Ms. Kedra pleads a viable state-created danger claim under the 14th Amendment based on defendant Richard Schroeter's conduct in the shooting death of her son, State Police Officer David Kedra, and whether Mr. Schroeter is entitled to qualified immunity. Starting with the state-created danger claim, the element of the claim that the District Court and the defendant have focused most heavily on is the culpability standard. The setting for the events here was a training class, which allowed for unhurried judgment. There's no question about the other three prongs, is there, on the state-created danger test? The District Court didn't engage with the other prongs. To the extent that the defendant has raised the other prongs, it seems to be more in the qualified immunity setting. I don't want to say that there are no questions, but we're prepared to answer any of those. The focus of the District Court's decision was on culpability. In the training class setting that allows for unhurried judgments, the culpability standard is deliberate indifference. This Court most recently recognized in the L.R. v. School District of Philadelphia decision, which also involved the classroom setting, that deliberate indifference is the culpability standard. Now, deliberate indifference may be satisfied either by knowledge or the obviousness of a risk of harm. Are those really mutually exclusive? I mean, don't we have case law from the Supreme Court in both Hope and Farmer indicating that the obviousness of the risk, when the Supreme Court has identified that as something to consider, the obviousness of the risk is informing the subjective knowledge of the government actor or third-party actor in question. So you pose them, and certainly the other side has suggested that we're really dealing with mutually exclusive categories. But are we, or is obviousness simply one of many kinds of circumstantial evidence you look to in considering whether there is actual awareness of a substantial risk of harm? I think that's a fair assessment. And the point that we were trying to press is obviousness is not the sole circumstance here, but there are factual circumstances showing the defendant's knowledge of the risk. The written acknowledgment about how to handle a gun, that a gun should never be pointed at another person, that any gun should be handled as though it were loaded, that in any exercise involving putting the finger on the trigger, the gun has to be safely pointed. So that training of Mr. Schrader establishes knowledge separate and apart from whether those, whether the elements of that training would otherwise be considered obvious. Even if somehow they weren't obvious, he knew them by virtue of it being part of his training to do his job. And then separately by the fact that he pled guilty in state court to a knowledge-based recklessness crime. We think that all, each of those pieces that the guilty plea… And the district court said that should not be considered, that the district court was stopped from considering that. Right. Do you continue to disagree with that position? Yes, for the reasons given in our brief, that this is not an estoppel situation. This is not an instance of Mr. Schrader being prevented from defending himself. We're simply using it to bolster the plausibility of our knowledge allegation. And no cases cited by the defendant involved a prohibition of using a guilty plea as a pleading fact to bolster the plausibility of knowledge. Well, it's an evidentiary issue, isn't it? I mean, if someone pleads guilty to an offense, you use it as an admission against interest. But they can always, but it's not estoppel. I mean, there's a difference, right? There's a significant difference. And what I'm going to say is that as an evidentiary question, I think there's no question the guilty plea would be admissible as evidence. And so at a bare minimum, I think that it not only helps us get by the Rule B-12, B-6 motion, but also would be sufficient to get by a summary judgment motion by the defendant. The question of does the guilty plea stop the defendant from contesting the elements of the charge to which he pleaded guilty, I would submit it's not presented here since we haven't gotten past the pleadings, but that if it were, as a matter of Pennsylvania law, this court in the non-precedential NB versus City of Philadelphia case at least recognized the possibility that under Pennsylvania law that a guilty plea could be a basis for summary judgment against the pleading party on the elements of the charge that were pleaded to. That question is not presented here because there's just not an estoppel situation. The antitrust cases we cited addressed the use of a guilty plea to bolster the plausibility of an element of the claim, and here that element is knowledge. So do we understand correctly, your argument is in essence that the theory that you're pursuing in the complaint is that there was actual, as in subjective, or you've alleged sufficient facts to give rise to an inference of actual subjective awareness of a substantial risk of harm, and the district court erred by characterizing this as a case where that was not at issue, all that was at issue was whether it's not awareness, do we have, is it clearly established that obviousness of risk absent that awareness is sufficient? Yes, that's exactly what we're alleging and exactly what we're arguing. Nothing to add to that other than to now turn to the qualified immunity questions of whether the rights that are at issue in this case were clearly established at the time of the conduct. What is the right at issue? The right at issue is the right of a person not to have a gun pointed at him and fired when he poses no threat of harm to anyone. And that's a right, the right that I just described has been recognized in what we submit are more difficult settings than the classroom setting here. If that's the right, how do you violate that right or deny a person that right by pointing a gun at them that you think is unloaded? Well, I think an important point is that the point that we conceded in the district court is that Mr. Schrader didn't know the gun was loaded. We did not concede he thought it was unloaded. We believe based on the training he had which said you handle every gun as though it's loaded that he did have knowledge that it could be loaded. And by knowing that it could be loaded, he had an awareness of the risk of harm that in fact occurred. And so we would submit then that the qualified immunity question on culpability and knowledge If you're using the argument that Officer Corporal Schrader didn't know that the gun was unloaded, okay, is it a reasonable inference that he would have pointed a gun that he thought had a serious risk of harm at Mr. Kedra? We submit that that's exactly what happened because he knew that every gun poses a substantial risk of serious harm and that's exactly what he did. By his training, he knows that every gun could do exactly what that gun did. And so he was aware of that risk. For whatever reason, he discounted it. Now in the defendant's briefing, isn't that negligence as opposed to deliberate indifference? No, it's not. Not when there is actual knowledge of the risk. And that's what we have here. This is not just a random person off the street, what do they know about guns? This is somebody who is trained in the proper handling of guns and the risk that they pose. So it's the same as L.R.? Well, no. There's greater knowledge of risk here. Greater knowledge here? Yes. In L.R., what ultimately this court rested on was that it's obvious to any teacher that any unidentified adult could be a danger to the child. Here we know Mr. Schrader was trained that any gun could be a risk to shoot and kill somebody. The training element, the written acknowledgment, shows that Schrader had greater knowledge here than at least the court recognized of the teacher in L.R. And so that's why the... But the teacher in L.R. asked for identification and they didn't have any and she still let the child go with the individual. But what the court at least didn't describe in L.R. was, did the teacher know that an unidentified adult is a potential threat? Now, what I'd like to say is because we know here from Schrader's training that he did know that any gun is potentially dangerous, that knowledge is more like the knowledge of the 911 call operators in the Phillips case because they knew the ex-boyfriend was beside himself and was a threat of harm. And I think I've talked over my time. You haven't talked over it yet, but since you transitioned very nicely into Phillips, you've claimed that you should have been given a right to amend your complaint. What more could you say that you have already said? Well, it's on a very precise point. We believe we did say enough. We believe we did say enough bad knowledge. The district court said, yes, you plead he knew the rules, and yes, you plead he violated the rules, but you didn't plead that he knew he violated the rules. To the extent that's a distinction that matters, we can plead that. We think that it's inferable from what we did plead and there's not a need to go through the formal exercise. And I believe that was the defendant's argument that sort of if we're right about everything else, we don't need to amend there. But if the court agrees with the district court that that's a distinct point that should be pleaded, we can plead it and we would like the opportunity to. Given what you've described about why we're dealing here with actual awareness of a risk of harm, can we go back to the way that we're defining the right at issue? Because presumably if this were a demonstration, say, of how to disarm an attacker in the field, pointing a gun where someone had gone through all of those safety protocols to ensure that the gun didn't pose a risk of harm would not meet the criteria that you've described for why this is deliberate indifference, why it's egregious here. So do you need to then refine the way you're defining the right? Is it really just pointing a gun or shooting at someone who doesn't pose a danger? I don't think we do need to refine it. If I can go beyond to answer the question, what Your Honor described is a lot like the First Circuit case, the Morero-Rodriguez, and the facts in that case where the training did involve the police subduing somebody and using a weapon, but among the violations of protocol that preceded the tragic shooting there were, one, there was a question about should bulletproof vests be used, and they were consciously chosen not to be used. Two, that part of the protocol was you use dummy guns, not real guns. And three, part of the protocol was guns get dropped at the door, so no loaded gun can possibly make its way in. And so in that sense, in that setting where the police need to be trained on use of a gun against another person, there are steps that can be taken so that at least the thing being used doesn't pose the risk, unlike the guns that the traitor was using here. And I think that's what makes this case different from what Your Honor described. If I could reserve the remainder of my time. Okay. And Mr. Porco, I'll be back on rebuttal. Thank you. Ms. Tussero. May it please the Court. I'm Claudia Tussero from the Attorney General's Office, and I'm here on behalf of the Appley Corporal Schrader, former Corporal Schrader. I'm acutely aware, as I'm sure everyone is, that the Kedra family suffered a terrible loss here, and I just want to say that right up front. But that certainly should not overshadow the legal questions that we're talking about here, which from our perspective is an accidental shooting that resulted in the death, and whether that was constitutionally actionable. It was not. As I believe Judge Fischer mentioned in passing, this is a negligent act. The right in question is the first thing that has to be addressed in a qualified immunity situation, and in view of the argument that was made in the reply brief and just now about the case law, about not waving guns around in front of unarmed people, I think it's important to right up front get away from that line of authority, because those cases, the ones that involved 1983 cases going forward against law enforcement officers who had inappropriately used guns, were basically Fourth Amendment cases where citizens were challenging the conduct of a law enforcement officer who misbehaved during the conduct of a law enforcement activity. They had nothing to do with a training class. I think that conception of the right at stake in this case, and to suggest that, well, everybody knows you can't point guns at other people, is way off base. In preparing for this argument, I reread the Spady case, Spady v. Bethlehem Area School District, which we cited in our brief but didn't discuss at any length. I think, however, that it is very analogous to the situation we face in this matter. This court reversed the denial of qualified immunity in that case, and it was a state-created danger case against a teacher whose student died. Unlike the district court in this case, which, as has already been touched upon, focused on the elements of a state-created danger case, in Spady the court didn't even have to get to that point because it was looking at the right at stake. Didn't we indicate in L.R. that that way of defining the right at issue was too specific? It was too narrow. And we described the right in L.R. in a broader way. The right in L.R. was defined as, and I happen to have that right in front of me, an individual's right not to be removed from a safe environment and placed into one in which it is clear that harm is likely to occur, particularly when the individual may, due to youth or other factors, be especially vulnerable to the risk of harm. And what's striking about that, reading it aloud, is how very tailored to the scenario in the case that description of the right is. Isn't that fairly tailored to our situation as well? Excuse me? Isn't that fairly tailored to the situation that we have as well? Why aren't we dealing with something like a right not to have a training instructor employ deadly force on an unarmed trainee without following any safety protocols to ensure that the trainee is not being placed in the way of substantial harm? The reason there was danger in this case, as has been discussed, is that the gun happened to have that bullet still in it. And I understand what my learned opponent said about how, I shouldn't say I understand it, I emphasize that they very legitimately conceded that they could not allege that Corporal Schrader knew there was a bullet in the gun. I don't see really much difference between that and this alternative of saying, however, we didn't concede that he couldn't say that he knew there wasn't a bullet. I think that's two sides of the same coin. Well, no, it's not exactly the same. Because what you're describing is that nobody's alleging he murdered him. If he knew there was a gun, if he knew there was a bullet, and he deliberately shot him, that would be murder. They're not alleging that.  But state created danger short of murder. Yes, it is. But Judge Fisher raised an important detail, which is, if you start from the premise that he didn't know there was a bullet in the gun, is it a logical inference that an experienced state police officer, who has the responsibility of teaching other officers what to do, would have done what happened here? If he didn't know there was a bullet in the gun, he would not have pulled that trigger and expected to simply be demonstrating the trigger reset. He would have known that there was a danger in doing it. He wouldn't have done it. Shouldn't the inference be, he didn't follow protocol, which everybody concedes. And had he followed protocol, this would not have happened. But isn't the inference that he just didn't know? He pointed a gun at an individual not knowing whether there was a bullet in it. Well, I think that the fact that he pointed the gun when he did, under the circumstances that he did, cannot be underestimated because he was demonstrating the gun, which he was supposed to be doing. He held the gun up, and he had his finger on the trigger because if the gun were sitting on the table, he couldn't have shown what he needed to show. I didn't think you would have raised the argument that he had to point it at an individual to do the demonstration. I think that I said something in the brief to get at that point. Well, maybe I didn't appreciate that. That's how I understood demonstrating the trigger reset. Well, why can't you just shoot it at a target? I mean, that's why I understood he was supposed, he should have done it if he was following protocols. He would have demonstrated by shooting it at a target. Well, he wasn't going to shoot it. He was showing how the trigger mechanism worked. But that does shoot it if there's a bullet in the chamber. Well, it can, as we now know, yes. Let me ask you this. The Third Circuit has set up this three-tiered standard of if it's a sudden emergency, it has to show intent to cause harm. If you have plenty of time to deliberate, it's deliberate indifference. And then there's this intermediate of gross negligence. Where do you think this falls in that spectrum? Well, I think the argument can be made, and it is made in our brief, that this is an intermediate case because he didn't have, like, hours and hours, weeks and weeks to think about a course of action. But either intermediate or deliberate indifference, less demanding standard, requires conscious knowledge of a substantial risk. And I think what was missing here, due to the lack of knowledge of the bullet, was conscious knowledge that doing what he did, which he had done in the last class and the class before that, without incident, was going to result in the tragedy that it resulted in. How can we reconcile that? Farmer has said explicitly that even in the Eighth Amendment context, a plaintiff does not need to show that an official acted or failed to act believing that harm would actually befall an inmate. It's enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. And we've likewise said in Zicardi that you don't need to show that harm was practically certain to occur. You simply need to show that a defendant is aware of facts from which one could reasonably draw the inference that there is a substantial risk of harm. But Farmer also says that the defendant in the case, that type of case, must have the knowledge of the risk and must draw the inference, the inferences of a substantial risk of harm, not the inference of certainty of it. I mean, that is what Farmer and we in Zicardi expressly disavowed. But I still see a difference between that and drawing an inference that something is risky and about to happen. Let's take the extreme example. We know from the Supreme Court that a high-speed chase at 100 miles an hour pursuing a suspect with little time to deliberate does not rise to the level of a violation, right? Right. What if you had the same situation, a police officer who's going 100 miles an hour just because they want to get back to the station quicker or something like that, knowing that they don't intend to get in an accident and they think they're a safe driver, but would that shock the conscience, driving 100 miles an hour for no good reason? I think a state police officer or anybody else driving 100 miles an hour is subject to the traffic laws. I don't think that that's a state actor engaging in a state-created danger type of activity. It just doesn't fit that paradigm. State police officers and all kinds of other people drop speed at times, and that can be dangerous. If that is a constitutional violation, then any misbehavior by a state actor becomes a constitutional violation too. And I think what I want to get to, if I could circle back, is to why I think the right in question was defined wrongly here by focusing too much on the abstract dangerousness of violence. How would you describe the right in question? Tracking spady again, as I started to say, is there a clearly established constitutional right under the Due Process Clause in favor of a trainee in a state office which requires affirmative compliance with all required safety procedures so as to, and these are the words that are helpful in spady, minimize the risk to the trainees during a training session. In spady, the case involved a PE teacher and a high school student who drowned. And the eventual decision said that there was qualified immunity because there was no way that the teacher could have anticipated or understood or recognized that risk and taken the action to minimize the risk that ultimately would have been needed, even though that teacher sent the poor kid back into the pool when he first encountered difficulty. So there was an affirmative act, I suppose you could say there, but the right in question, was it constitutionally required that a teacher's failure to take action to assess a non-apparent condition that placed the student in mortal danger? There's a non-apparent condition here, too. By analogy, was it constitutionally required? I'm not saying was it morally or as a matter of common sense required, but was it constitutionally required for the defendant, a training instructor, to take all prescribed precautionary actions to minimize the risk that the trainees could have faced in this class? What's your answer to that question? I say there is not a clearly established law that establishes that right. Well, that's the second prong, or wealth. No. That's the other prong. I shouldn't say second. Well, okay, but... If you establish the right that way... There is not a clearly established... Is there a separate... Let's go to the first point. You articulate a right. Yes. Is there a right such as that? I don't think there is. There wasn't in Spady, and there isn't in this case either. And one reason why I want to emphasize that is that it, in my judgment, is extremely important that this happened in an employment setting. As opposed to an Eighth Amendment setting? Well, Spady was an Eighth Amendment either, but as opposed to any other setting... Or a Fourth Amendment setting. Or a Fourth Amendment. The Supreme Court in Collins has specifically held that there's no right to safe working conditions, and this court in Coucher, however you say it, clearly followed that. Are you suggesting this is a working conditions case? Well, frankly, yes. This is an incident that occurred during work hours. It was a required training session. It was attended by employees, taught by a training instructor who was also an employee, and the result was not what was supposed to happen, clearly, but it was a situation that resulted in a... The district court concluded that whatever the right was, it wasn't clearly established. However it articulated the right, the district court found that it wasn't clearly established. Do you agree with that? I do agree with what the district court ruled, although I'm offering this additional point... I understand that. ...as a reinforcement of it. I understand. The district court pointed to the language in Sanford, but there's similar language in Coucher that says that the subjective standard of deliberate indifference is what we've normally approved of, and we have not answered the question of whether there should be an objective component also. If there is no objective component, then the should-have-known piece of the analysis kind of goes by the wayside because of the lack of subjective knowledge, and qualified immunity prevails in this case. So the district court was correct to reach that conclusion. If there was not subjective knowledge, then Corporal Schrader could not be held accountable under the 14th Amendment state-created danger theory. We're dealing here at the motion-to-dismiss stage. This is not even discovery, much less a day in court to prove subjective knowledge. Why haven't the facts that they've alleged in their complaint, facts like experience, his years of training, the fact that the corporal had gone through and signed off on the written checklist, the fact that it's an obvious risk, and the guilty plea with an admission to the same state of mind that is required, that is deliberate indifference even at the lowest prong, why don't those allegations give rise to an inference from which, if they're proven that a reasonable jury can conclude subjective knowledge, why isn't that enough to get past at least a 12B6 motion? Let me just quickly say about the guilty plea that I think that pointing to that and relying on that at this stage is basically a legal conclusion. Whether you want to call it collateral estoppel or something else, it's assigning a legal conclusion to the events that happened. Why isn't it just pointing to relevant and admissible evidence? It may be relevant in describing the situation that the man pled guilty, but the fact that he pled guilty does not in and of itself mean that as a factual matter he had knowledge on that occasion of the risk that was posed. I also would think the previous part of your question, if I understood you, is related to the allegations about the safety procedures, which were for trainers, by the way. They weren't just general gun procedures. But that entire set of details relates to generic risks, not to a risk that was caused by Corporal Schrader's affirmative conduct on this question, on this occasion, vis-a-vis Trooper Kedra in particular. The only thing we can or I can comfortably say about what Corporal Schrader did on this occasion was that he failed to follow those requirements. That is different than affirmatively creating, not just allowing, but creating a danger. There are lots of state-created danger cases that come through this court and others, and the typical ones involve a state actor creating a situation which enables someone else and many of them to endanger the eventual plaintiff. But it's always the case in these cases that there is a creation of the danger, not just a recognition of a possible danger. And the end result, frankly, of most cases is that the state-created danger claim does not advance past either a motion to dismiss or summary judgment in many of them. There are a few where it gets past the motion to dismiss. I'm not trying to say otherwise. But it's a really, really, really hard kind of case to set forth and to properly plead. This particular case, as horrible as it is, is a case of negligence on the part of Corporal Schrader. That is exactly what it is. He has never said otherwise. And you can talk about why he may have pled guilty to criminal charges as much as you want. I think there are many considerations that probably go into something like that. And it doesn't necessarily mean he or anybody else said, hmm, the elements of the crime are this. I did this. I am, therefore, guilty. What about the amendments? Let me ask you something. Your red light is on. I see that. And you've gone beyond your time. The district court denied the plaintiffs the right to amend their complaint, said that there wasn't anything else that could have been pled. An argument here. You heard Mr. Quirk say that at least they could add to the pleading the words that he knew. Why shouldn't the right to amend be granted here? Well, I have to confess I'm still unclear what this additional amendment would say that isn't already encompassed by the existing complaint and the reasonable inferences that you can draw from it. But did the district court explain its reasoning sufficiently? The district court did not explain its reasoning. We've said in prior cases that where a right to amend is denied, the court should explain their reasons. I tried to address that in our brief. I know that that's the typical rule, but it has been said in cases where this court has concluded that there was something worth amending to add to the case and sends it back for that purpose. I don't believe it would change anything here to tweak a few words to say what is, in effect, already said. Our position, as you know, is that there's no point. So you think the district court was correct, even though it may not have fully explained its reasons? On that point, yes. If it was correct on the ultimate decision, which we have obviously tried to explain why the court was, then it was also correct on the amendment. Okay. At one point, the district court described the question presented as whether Corporal Schroeder disregarded the risk that he was not following all the safety protocols. As I understood the opponent's response as to what they might amend, it was addressing this issue. That is, if the district court thought, if the question presented is, was he aware that he was not following the safety protocols, was he conscious that he proceeded through the preparation and the training without undertaking the safety protocols, they could amend the complaint to make that allegation. Is that even something disputed by the Commonwealth? I mean, whether he was, whether the corporal knew that he didn't follow the protocols? The best way I can think of to respond to that is that because Corporal Schroeder was an experienced person dealing with training experience in particular, it can't be alleged that he knew he wasn't following them. He has to have believed he was following them or he would not have done what he did. There's no way you can infer that somebody with his experience and background would do what he did if he had known that he had not checked the chamber and not removed the gun and not done the things he was supposed to. He didn't do them, apparently, and he didn't do them for reasons that are unknown but basically have to have been a question of negligence. He was in a hurry, he felt sick. I don't know what happened to him that day, but he didn't do them. Well, if he was in a hurry, though, he may have then consciously skipped them. I don't, I just can't see that as a reasonable inference. I'm sorry, I just think a person like him would not skip, he might have skipped some of the lesser ones, but he wouldn't have skipped to take the bullet out if he had known that there was a bullet in there. Well, that, okay, but that, obviously he would have taken the bullet out if he knew it was there. That's the point. Because he skipped the safety protocols, though, is because, is the reason he didn't know it was there, right? Apparently, yes, but if he had not skipped those protocols, he would have found the bullet and he would have taken it out and he wouldn't be here. This is a quintessential jury question. This is a credibility determination, mental, as to his mental state. What they've already alleged is that he knew what the safety protocols were, he had been trained in them, and he didn't follow those safety protocols. Can a reasonable jury, with those facts, draw the inference that he was aware that he wasn't following the safety protocols? And why isn't, if that's even the right question to ask, as the district court at some point formulates it, why isn't that already sufficiently pleaded in the complaint? If it's already sufficiently pleaded, then I lost track of what we were asking. If we're asking about amendment, we don't need it if it's sufficiently pleaded. If it was sufficiently pleaded, you would be here. And we would not be here, that's true. But I still think that it doesn't get past the other issues that we have tried to articulate on paper and today about the lack of any similar kinds of cases to this one, that established that there was a violation of a clearly established right in this particular context, where a police officer shoots another police officer. I think we understand your position and we thank you. Thank you. Mr. Quirk. Mr. Quirk, if you would. How, you know, the district court dismissed this on the basis that whatever the right was, it wasn't clearly established. What do you point to? I mean, Alar helps you, but it was decided, it wasn't decided at a time that it can help your client. But Phillips was. And Phillips is the case that establishes that if you have knowledge of a risk of a homicide, and you act in indifference to it, you have a state-created danger. In this case, you didn't have knowledge, you didn't plead. All right, go ahead. We think it's a more than reasonable inference that the written acknowledgement of the different safety rules at least creates an inference of knowledge. And we cited cases about putting something in writing is evidence of knowledge of the contents of the writing. And that's what we have here. Two points I'd like to make. One, the Commonwealth tries to collapse the gun safety requirements here with checking for a bullet. That's one of them. But separate and apart from that, even if you check for a bullet, one of the requirements is an instructor must never point a firearm at another person. The Commonwealth's position is it's not plausible to infer that he knew he was pointing a gun exactly where he was pointing it. Whatever he knew about his preparation, he pointed the gun. That's pleaded. And they're saying it's not plausible to infer that he knew what he was doing with his own body at that time. And so the pointing of the gun is what takes us into the two bodies of cases that do clearly establish the right that we're talking about, the right that I described earlier, the right not to have a gun pointed at you when you don't pose a risk of harm to others. It comes both from the Fourth Amendment cases we cited, from the first seven, and from this court going back to Baker v. Monroe Township, the pointing of the gun of the family that was present at a raid site that weren't the target of the raid, and the court said that use of guns in handcuffs must be justified by the circumstances. You can't just point a gun at anyone. That's what happened here. There's no circumstance whatsoever that made it proper for Officer Kedrick to have a gun pointed at him. And then the second line of cases addresses that conduct in the workplace setting. There are a number of these. The Moreira-Rodriguez police training case from the First Circuit, the Hawkins v. Holloway case, which the Commonwealth acknowledged, involving the sheriff who disciplined his underlings by pointing a gun at them, and recognized the claim there and said that that conduct is so far beyond the bounds of performance of its official duties that the rationale underlying qualified immunity is inapplicable. I'll acknowledge we don't have that kind of intentional wrongdoing here. But we do have knowledge of the risk that any gun, including the one he had, could pose, and actions in deliberate indifference to it by poking it at a person and pulling the trigger. And the consequence that occurred was a consequence he knew could occur, and that's why he was trained and acknowledged in writing that he must not do it. But to get to that obvious risk, I think the hurdle of getting to knowing that obvious risk existed, which establishes, if you can prove it, the deliberate indifference, the hurdle with that is it just seems to me that it's an illogical inference to assume that the defendant in this case would have pointed that gun if he knew that bullet was in the chamber. But we don't have to establish that he knew the bullet was in the chamber. But you have to establish something. You have to establish either actual knowledge, which you concede you didn't plead, right? No, no. We pleaded knowledge of the safety requirements. Of the actual knowledge of the existence of the bullet. You didn't plead actual knowledge of the existence of the bullet. That's correct. In our positions, we don't need to, because if he has knowledge of the existence of the bullet, Judge Malloy is right. Now we're looking at intentional homicidal conduct, and that's not what deliberate indifference requires. You have to have awareness of a risk, not certainty of the risk. It might be. Officer Schroeder could have been charged and convicted of homicide. He might still be here. He might still be here on the constitutional court question. With homicide evidence, that would get into, even if this were a time-pressured situation where there is no opportunity for deliberation, that he could still be charged with intentional wrongdoing. Because the commonwealth doesn't dispute that this is not, and he does not have to prove intentional wrongdoing. But aren't you saying, you have conceded that he didn't know there was a bullet in the chamber, correct? Yes. All right. But you're arguing that he knew that he didn't comply with the safety instructions, right? Yes. Now, isn't the first shock the conscience, or isn't the first deliberate indifference, and the second negligence? No. And why not? Because he, unlike other people, he knows from his training that any gun could do what this one did. That even if you don't know, remember, what he's trained in are two separate steps. One is check if there's a bullet. But doesn't that require us to jump to that illogical inference to establish plausibility? No. Because the inference is not that he knew this was going to happen. It's that he knew this could happen, because it always could happen. That's what's in his written acknowledgment, is that the risk is always there. And that's deliberate indifference? Yes. Because once he knows that risk is always there, and points a gun at a person and pulls the trigger, I feel like this isn't conduct that's like a lot of other things. It's pointing a gun at a person and pulling the trigger, and he's trained specifically that you never do that, period. Even if you check, you still don't do that, because your check could be wrong. You might miss it. And so on that, what we have to establish is he knew there was a risk of this harm. Not a high, not certainty, but a risk, and he did know that. Can I ask you about the significance of L.R.? Because L.R. and its formulation of the nature of the right, and the inference that is drawn from the training experience of the kindergarten teacher, the failure to follow safety protocols, and the obviousness of the risk, all being used by the court there to infer actual awareness of risk of harm. The decision is rendered after the facts of this case. It relates to events that occurred a year before those in question and holds that the right is clearly established. Does the fact that it's issued after the events in this case preclude it demonstrating what is clearly established? Do we look to when a decision is handed down, explaining something is clearly established, or do we look to when the events took place that are described as involving a clearly established right? The latter. The correct way to treat the L.R. decision is that it is law for what was clearly established in January 2013, 20 months before the events in our case took place. Because the L.R. decision didn't only decide the state-created danger claim, it also decided the qualified immunity question and held that the rights at issue were clearly established at the time of the teacher's conduct, which was 20 months before the time here. And I would just fall back on because we know more about the defendant's training here than we did in the L.R. case, this is an even stronger case for finding that there was actual knowledge, and actual knowledge was what was at issue in the Phillips case, which long predates all of this. All right. Mr. Quirk, first of all, we thank you very much. And we will take this to thank both counsel for excellent jobs in their briefs and their argument, and we'll take the matter under advisement. Thank you.